# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY BINKLEY,** | : | **CIVIL NO. 1:CV-10-1245** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **GOVERNOR EDWARD RENDELL,** | : | |
| ***et al.,*** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Terry Binkley, an inmate currently incarcerated at the State Correctional Institution in Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil rights action with a complaint filed on June 14, 2010, pursuant to the provisions of 42 U.S.C. § 1983.  (Doc. 1.)  Named as Defendants are a number of Pennsylvania Department of Corrections ("DOC") officials and employees ("Commonwealth Defendants"),[1] as well as Keefe Group, the company that provides SCI-Dallas with

---

[1] Named as Commonwealth Defendants are Edward Rendell, former Governor of Pennsylvania; Jeffrey A. Beard, former Secretary of the DOC; Dorina Varner, Chief Grievance Coordinator for the DOC; Richard Ellers, Director of the DOC's Bureau of Health Care Services; Anthony Miller, Director of the Pennsylvania Correctional Industries; Michael D. Klopotoski, former Superintendent of SCI-Dallas; Mr. Walsh, Superintendent of SCI-Dallas; Mr. Mooney, Deputy Superintendent of SCI-Dallas; Norman Demming, Deputy Superintendent of SCI-Dallas; Tom Leskowsky, DOC Health Care Administrator; Mick Breuninger, Unit Manager of SCI-Dallas' F-block; Corrections Officer ("C.O.") Mulgrew; C.O. Mosher; Anne Marie Chiampi, Principal of SCI-Dallas' Education Department; Mrs. Haradem, SCI-Dallas' Head Librarian; Mike Truchon, Facility Maintenance Manager 3; Gary Davis, Former Food Service Manager 2; and, Captain Zackarackis, Captain of Security.

commissary items, and Jane Jesse, M.D., a medical provider at SCI-Dallas.  In his

complaint, Plaintiff makes several allegations about the conditions at SCI-Dallas.  He

seeks monetary damages, as well as injunctive relief.

Presently before the court are two motions to dismiss filed on behalf of two sets

of Commonwealth Defendants.[2]  (Docs. 11 & 41.)  For the reasons set forth below, the

motions will be granted in part and denied in part.


I.    **Background**

A.    **Facts**

For purposes of disposition of the instant motions to dismiss, the court will

recount only the factual allegations provided by Binkley related to the Commonwealth

Defendants, and will accept those allegations as true and view them in a light most

favorable to Binkley.

---

[2]   The first set of Commonwealth Defendants filed a motion to dismiss the complaint on
September 16, 2010.  (Doc. 11.)  However, Binkley did not identify four Commonwealth Defendants
in his complaint, and thus they were not served.  By order dated June 9, 2011, the court directed
Binkley to provide the identification and address information of the individuals not yet served with
his complaint.  (*See* Doc. 35.)  Binkley complied with that order on June 29, 2011, (*see* Doc. 36),
and the court directed service of the complaint on the remaining Commonwealth Defendants on July
1, 2011, (*see* Doc. 37).  On August 25, 2011, the remaining Commonwealth Defendants filed a
motion to dismiss the complaint.  (Doc. 41.)

In his complaint, Binkley alleges that at some point in time former Governor Rendell enacted a policy to create more bed space in DOC institutions.  (Doc. 1 at 10 ¶ 18.)  As a result of this policy, implemented by a number of Commonwealth Defendants including former Secretary Beard, inmate Sechrist had his single cell status revoked and was placed in a double cell.  (*Id*.)  Once placed in a double cell, inmate Sechrist immediately attacked his cellmate and attempted to either kill him or sexually assault him.  (*Id*.)  Inmate Sechrist was placed in the Restricted Housing Unit ("RHU") for a period of time, and, prior to his release, he told the Program Review Committee that he would assault another inmate if he was put in a double cell again. (*Id*.)  The Program Review Committee ignored inmate Sechrist's threats, stating that the institution was too overcrowded to place inmate Sechrist in a single cell, and released him, placing him in a double cell with Binkley.  (*Id*.)

When Binkley became aware that he would be placed in a cell with inmate Sechrist, he informed Defendants C.O. Mulgrew and C.O. Mosher of inmate Sechrist's history of behavior and of his own fear for his life.  (*Id*. at 11 ¶ 19.) Mulgrew and Mosher "began laughing and taunting [Binkley] while betting on how long it would take before he too was assaulted."  (*Id*.)  Binkley also reported his fears to Defendant Breuninger and another official, who "stated that they pretty much didn't

3

care about his concerns and explained that he would either remain doubled up with this inmate, or be placed in the RHU." (*Id.*)

Thereafter, on July 20, 2009, between 4:00 a.m. and 4:30 a.m., Binkley was awakened to inmate Sechrist cutting his neck with a razor and choking him. (*Id.* at 11 ¶ 20.) Binkley repeatedly called out for help, and an officer "eventually" arrived and called for backup. (*Id.*) Approximately ten minutes later, officers arrived at the cell, handcuffed both inmates, and took them to the hospital area of SCI-Dallas. (*Id.* at 11 ¶ 21.) While Binkley was awaiting treatment, unidentified officers "began to make light of the condition of [Binkley] . . . ." (*Id.*) Upon receiving treatment, the attending nurse told him that he was not hurt, but gave him a bandage and told him to report back to the medical department later in the day. (*Id.*) Binkley did report back to medical as instructed, but was given no further treatment for his injuries, namely to his neck and back. (*Id.* at 12 ¶ 22.) Further, Binkley attempted to get psychiatric treatment for the trauma he experienced, but has been denied such treatment. (*Id.* at 12 ¶ 23.)

In his complaint, Binkley also makes a variety of general allegations relating to the conditions of SCI-Dallas. He alleges that SCI-Dallas is overcrowded and conditions have significantly deteriorated during his approximately seven years of

confinement there.  (*Id*. at 6 ¶¶ 1, 2.)  He complains about the plumbing and lack of

adequate shower facilities.  (*Id*. at 6 ¶ 2.)  He complains that the electrical systems are

"overloaded," causing lighting to be "minimal" and inmates to be unnecessarily

locked down.  (*Id*. at 6 ¶ 3.)  He alleges that the food preparation facilities have

"degenerated to deplorable standards," with inmates finding foreign objects in their

food, and being forced to eat undercooked or cold food with filthy utensils.  (*Id*. at 6 ¶

4.)  He alleges that commissary food items are stale and rotten, and other items such

as footwear and electronics are defective, hazardous, and fraudulently sold.  (*Id*. at 7 ¶

5.)  He complains that the medical facilities are understaffed and medical staff is

incompetent.  (*Id*. at 7 ¶¶ 6-8.)  He complains about poor heating systems, ventilation,

noise levels, as well as a lack of emergency call buttons in cells and unsafe prison yard

conditions.  (*Id*. at 8-9 ¶¶ 10-14.)  Finally, he complains that mentally ill inmates are

being improperly celled in the general population.  (*Id*. at 9-10 ¶¶ 15-16.)

In addition to the general complaints of the conditions at SCI-Dallas, Binkley

also makes several complaints about the law library.  He complains that it is difficult

to sign up for law library time.  (*Id*. at 12, 13 ¶ 26.)  He further alleges that the library

is inadequate and poorly staffed.  (*Id*. at 19 ¶ 16.)  He complains that he and other

inmates are denied access to DOC policies and procedures set forth in the inmate

handbook, as well as to "legal books and leisure reading."  (*Id*. at 19-20 ¶¶ 16, 17.)

### B.      Procedural History

Binkley filed his complaint on June 14, 2010.  (Doc. 1.)  On September 16,

2010, the first set of Commonwealth Defendants filed their motion to dismiss the

complaint.  (Doc. 11.)  After being granted an extension of time, Binkley filed his

brief in opposition on February 23, 2010.  (Doc. 32.)  Once served with the complaint,

the second set of Commonwealth Defendants filed their motion to dismiss on August

25, 2011.  (Doc. 41.)  Binkley filed his brief in opposition to this second motion on

September 14, 2011.  (Doc. 43.)  Thus, the motions are now ripe for disposition.

## II.      Standard of Review

Among other requirements, a sound complaint must set forth "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Fair notice" in Rule

8(a)(2) "depends on the type of case – some complaints will require at least some

factual allegations to make out a showing that the pleader is entitled to relief."

*Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).

"[A] situation may arise where, at some point, the factual detail in a complaint is so

undeveloped that it does not provide a defendant the type of notice of claim which is

contemplated by Rule 8." *Id*. A plaintiff must provide "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" to show

entitlement to relief. *Twombly*, 550 U.S. at 555; *accord*, *e.g.*, *Phillips*, 515 F.3d at

231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is not

"compelled to accept unsupported conclusions and unwarranted inferences or a legal

conclusion couched as a factual allegation.") (quotations and citations omitted));

*Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). *See also Ashcroft v. Iqbal*, –

U.S. –, 129 S. Ct. 1937, 1949 (2009) (recognizing that Rule 8 pleading standard "does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure

to state a claim upon which relief can be granted. In deciding a motion to dismiss

under Rule 12(b)(6), the court is required to accept as true all of the factual allegations

in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and

7

all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). *See Iqbal*, 129 S. Ct. at 1949 (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public

8

record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v.*

*Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   <u>Discussion</u>

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States.  *West v.*

*Atkins*, 487 U.S. 42, 48 (1988).  A defendant's conduct must have a close causal

connection to plaintiff's injury in order for § 1983 liability to attach.  *Martinez v.*

*California*, 444 U.S. 277, 285 (1980).[3]  A prerequisite for a viable civil rights claim is

that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's

constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak

of immunity for any individual who might deprive another of civil rights.  *See Buckley*

*v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  Nevertheless, it is well-settled that certain

government officials possess immunity from § 1983 liability.  *Id.*

Construing Binkley's complaint liberally, it appears that he is asserting the

following violations of the Eighth Amendment to United States Constitution: (1)

Defendants Rendell, Beard, Varner, Klopotoski, Walsh, Mooney, Demming,

Breuninger, Mulgrew, Mosher, and Zackarackis failed to protect him from his

cellmate, a known danger and risk to Binkley's health and safety; (2) Defendants

Ellers and Leskowsky failed to provide him with adequate medical care; and (3)

Defendants Rendell, Beard, Varner, Miller, Klopotoski, Walsh, Mooney, Demming,

---

[3]  The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

Breuninger, Mulgrew, Truchon, and Davis subjected him to cruel and unusual

conditions of confinement at SCI-Dallas.  He also claims that Defendants Chiampi and

Haradem denied him access to the courts.  In the instant motions, both sets of

Commonwealth Defendants argue the following: (1) the complaint should be

dismissed to the extent that Commonwealth Defendants are being sued in their official

capacities; (2) certain Commonwealth Defendants should be dismissed because

Binkley has failed to allege personal involvement;[4] (3) Binkley has failed to state a

claim of denial of access to the courts.  In addition, the second set of Commonwealth

Defendants argue that Binkley's third-party beneficiary claim relating to the

commissary sales should be dismissed due to a lack of federal jurisdiction.[5]  The court

will address these arguments in turn.

### A.   Official Capacity

---

[4]  Neither motion to dismiss makes an argument for dismissal of the claims against Defendants Breuninger, Mulgrew, Mosher, and Zackarackis, in their individual capacities.

[5]  While it appears that Binkley's third party beneficiary claim should be dismissed due to the lack of federal jurisdiction, *see Parker v. Gateway Nu-Way Found.*, Civ. Action No. 10-2070, 2010 WL 4366144, at *4 (D. N.J. Oct. 26, 2010) (holding prisoner plaintiff has no standing to sue for breach of contract between the state and other party, as prisoner is not an expressly designated third party beneficiary) (citing *Brown v. Sadowski*, Civ. No. 08-4489, 2009 WL 2182604, at *5, n.3 (D. N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials")), the court will defer judgment as to Binkley's conditions of confinement claims relating to commissary items until Defendant Keefe Group answers or otherwise responds to the complaint.

DOC Defendants contend that the Eleventh Amendment bars Binkley's claims for money damages against them in their official capacities.  The Eleventh Amendment precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued.  *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *see also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).  The doctrine of sovereign immunity also extends to a state official in his or her official capacity because "it is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the State itself."  *Garden State Elec. Inspection Servs. v. Levin*, 144 F. App'x 247, 151 (3d Cir. 2005) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  In *Will*, the Supreme Court held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted.  *Will*, 491 U.S. at 64.  However, the Eleventh Amendment does not preclude a suit against a state official acting in his or her individual, or personal capacity.  *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).  Based on this well-settled law,

13

Binkley's claims for money damages against all of the Commonwealth Defendants in their official capacities will be dismissed.  To the extent that Binkley has brought § 1983 claims against these Defendants in their individual capacities, however, those claims remain viable.  *See Hafer*, 502 U.S. at 31 ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.").

Turning to Binkley's claims for injunctive relief, the court concludes the following.  In *Will*, the Supreme Court noted that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) and citing *Ex Parte Young*, 209 U.S. at 159-60)).  As a result, Binkley's § 1983 claims for injunctive relief against the Commonwealth Defendants will proceed.

**B.    Personal Involvement of Defendants**

Commonwealth Defendants argue that Defendants Governor Rendell, Beard, Klopotoski, Walsh, Mooney, and Demming should be dismissed as a parties in this action because Binkley has failed to show personal involvement of these Defendants

14

with respect to his claim relating to their failure to protect him from inmate Sechrist. Further, they argue that Defendants Varner, Klopotoski, Leskowsky, and Ellers should be dismissed as a parties because Brinkley has failed to show their personal involvement based solely on their authority to grant or deny inmate grievances. Finally, Commonwealth Defendants argue that Defendants Miller, Truchon, and Davis should be dismissed as parties with respect to the conditions of confinement claims because Binkley has only asserted claims against them based on their supervisory status.

It is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of respondeat superior. *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 368 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976). It is also well settled in the Third Circuit that the defendant's personal involvement in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Hampton*, 546 F.2d at 1082. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which a plaintiff's claims are based. *Id.* As the court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

15

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207 (citations omitted).  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.  *Id*. at 1208.

### 1.    **Personal Involvement Related to Failure to Protect Claim**

In the instant case, Binkley does not allege any personal involvement of several of the above-listed Defendants with respect to his failure to protect claim.  First, with respect to former Governor Rendell, Binkley has not alleged that the former Governor was aware of or involved in the decision to cell him with inmate Sechrist.  In fact, the only allegation that Binkley makes here is that the former Governor enacted a policy which led to overcrowding in the prison system.  Assuming that such policy did lead to overcrowding in the prison system, there is nothing in Binkley's allegations that would cause the court to believe that the former Governor knew that these two particular inmates would be celled together, or even participated in that decision.  Further, Binkley alleges that former Governor Rendell implemented a policy forcing inmates to purchase commissary items from Keefe Group, although he was aware that

16

the items caused sickness and injury.  Not only does this bare allegation not meet the

standard with respect to personal involvement, nothing in Binkley's allegations

relating to commissary purchases relate to him personally.  Stated otherwise, Binkley

is not claiming that he himself was sickened by the commissary food items or harmed

by other defective items.  Rather, he appears to be making claims on behalf of other

inmates.  It is well-established that a prisoner proceeding *pro se* is inadequate to

represent the interests of his fellow inmate in a class action.  *See, e.g.*, *Caputo v.

Fauver*, 800 F. Supp. 168, 170 (D. N.J. 1992); *Oxedine v. Williams*, 509 F.2d 1405,

1407 (4th Cir. 1975).  Additionally, "a prisoner proceeding *pro se* may not seek relief

on behalf of his fellow inmates."  *Alexander v. N. J. State Parole Bd.*, 160 F. App'x

249, 249 n.1 (3d Cir. 2005) (citing *Oxedine*, 509 F. 2d at 1407).  As a result, and

based on the well settled law set forth above, Defendant Rendell is entitled to

dismissal from this action.

Further, with respect to Defendants Beard, Klopotoski, Walsh, and Demming,

Binkley has named these Defendants solely because of their supervisory positions.

Defendant Beard, in his capacity as the former head of the DOC, was responsible for

the overall operation of the DOC and certainly not aware of every inmate's situation

in the DOC.  Binkley has not alleged that Defendant Beard had any awareness of the

17

decision to cell him with inmate Sechrist.  Further, Defendants Klopotoski, Walsh,

Mooney, and Demming, are all former or current Superintendents or Deputy

Superintendents at SCI-Dallas.  Binkley has not alleged that Defendants Klopotoski,

Walsh, and Demming were aware of or directly involved in the decision to cell him

with inmate Sechrist.  As a result, the failure to protect claim will be dismissed as to

Defendants Beard, Klopotoski, Walsh, and Demming.  However, with respect to

Defendant Mooney, Binkley alleges that Defendant Mooney "personally sat on the

Program Review Committee and generally worked with the Security team to ensure

that the facility was being run safely."  (Doc. 1 at 16 ¶ 9.)  Given that Binkley has

alleged that the Program Review Committee, of which Defendant Mooney was

purportedly a member, intentionally ignored inmate Sechrist's history and threats of

violence, and viewing the facts in a light most favorable to Binkley, the court will

deny the motion to dismiss here as to Defendant Mooney.

### 2.     Personal Involvement Based on Authority to Grant or Deny Inmate Grievances

Turning to Binkley's claim against Defendants Varner, Klopotoski, Leskowsky,

and Ellers with respect to grievances, although Binkley alleges some facts that

indicate that they may have been aware of his concerns with respect to the conditions

of confinement and medical care based on his filing of grievances, Binkley cannot

18

assert liability against them due to their involvement in reviewing and/or affirming grievance decisions.  First, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement.  *Rode*, 845 F.2d at 1208.  Second, mere concurrence in a prison administrative appeal process does not implicate a constitutional concern.  *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (holding that administrative review of prison disciplinary hearings is not constitutionally guaranteed and, therefore, plaintiff's claims with respect to the Program Review Committee's decision did not rise to constitutional significance).  While prisoners have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts, which is not compromised by the failure of the prison to address grievances.  *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).  For these reasons, Binkley's conditions of confinement claims will be dismissed as to Defendants Varner, Klopotoski, and Leskowsky.  Binkley's failure to provide adequate medical care claim will be dismissed as to Defendant Ellers.

### 3.   Personal Involvement in Conditions of Confinement Claims

Defendants Miller, Truchon, and Davis argue that Binkley has failed to assert their personal involvement related to his conditions of confinement claims.  The court will address these Defendants separately.

First, Binkley asserts that Defendant Miller, serving as the Director of the Pennsylvania Correctional Industries, failed to ensure the safety of the items being provided to inmates by the commissary.  He states that Defendant Miller "defraud[ed] inmates in the Pa. D.O.C. and violated the plaintiff's rights as a third party beneficiary to provide said commissary items under color of law."  (Doc. 1 at 15.)  Further, in his brief in opposition to the instant motions, Binkley avers that Defendant Miller knew that footwear being sold to inmates as shower shoes were in fact sandals not made to be worn in the showers.  (Doc. 43 at 5.)  As a result, inmates were slipping and falling, injuring themselves.  (*Id*.)  Assuming these facts to be true, the initial flaw in Binkley's allegations is that he appears to be making claims on behalf of other inmates.  *See Alexander*, 160 F. App'x at 249, n.1 ("a prisoner proceeding *pro se* may not seek relief on behalf of his fellow inmates") (citing *Oxedine*, 509 F. 2d at 1407); *Caputo*, 800 F. Supp. at 170 (stating a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmate in a class action).  Binkley does not assert that he himself purchased the footwear and slipped and fell, injuring himself.

Moreover, he fails to allege what personal involvement Defendant Miller had in acquiring commissary items at SCI-Dallas beyond simply being the Director of the Pennsylvania Correctional Industries.  In the interest of justice to Binkley, the court will grant him leave to amend his complaint in order to reassert a claim against Defendant Miller.

Next, Binkley asserts that Defendant Truchon, serving as the Facility Maintenance Manager, failed to oversee the maintenance of SCI-Dallas to ensure the health and safety of inmates.  In doing so, Binkley again appears to making claims on behalf of other inmates.  For example, he alleges that "inmates in numerous cells throughout F-Block have had to subsist for year after year without heat."  (Doc. 1 at 20 ¶ 18.)  Binkley does not assert that he was one of these inmates.  Further, Binkley fails to allege what personal involvement Defendant Truchon had in causing harm to him beyond Truchon's role as the supervisor of maintenance.  However, in the interest of justice to Binkley, the court will grant him leave to amend his complaint in order to reassert a claim against Defendant Truchon.

Finally, Binkley asserts that Defendant Davis, serving as the head of the culinary department at SCI-Dallas, has allowed the entire department to "degenerate to substandard conditions."  (Doc. 1 at 21.)  In doing so, Binkley again appears to be

making claims on behalf of other inmates.  For example, he alleges that "[i]nmates often find foreign objects in their food, have to eat from filthy trays and cups, and often are served half cooked foods."  (Doc. 1 at 21.)  He also alleges that inmates often get food poisoning because of the unsanitary conditions in the kitchen area. (*Id*.)  However, Binkley has not asserted that he is one of these inmates subjected to these conditions or to food poisoning.  Further, he fails to allege what personal involvement Defendant Davis had in causing harm to him beyond simply Davis' role as the head of the culinary department.  However, in the interest of justice to Binkley, the court will grant him leave to amend his complaint in order to reassert a claim against Defendant Davis.

### C.   Access to the Courts

Commonwealth Defendants argue that the access to the courts claims against Defendants Chiampi and Haradem should be dismissed for failure to state a claim. The court will address these Defendants together.

First, Binkley asserts that Defendant Chiampi, serving as the school principal at SCI-Dallas, failed to provide adequate school programs to inmates.  He further claims that Defendant Chiampi failed to hire adequate staff for the library and impeded access to unnamed prison policies.  Second, Binkley asserts that Defendant Haradem,

serving as the head librarian at SCI-Dallas, failed to provide inmates with access to prison policies and procedures, as well as legal books and leisure reading.  He also makes a general allegation about the difficulties in signing up for law library time.

Assuming these facts to be true, the initial flaw in Binkley's allegations is that he again appears to be making claims on behalf of other inmates.  *See Alexander*, 160 F. App'x at 249, n.1 ("a prisoner proceeding *pro se* may not seek relief on behalf of his fellow inmates") (citing *Oxedine*, 509 F. 2d at 1407); *Caputo*, 800 F. Supp. at 170 (stating a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmate in a class action).  He does not assert that he himself was denied access to the law library and various programs.  Further, he cites to no date on which he was not allowed to sign up for law library time.

Further, while it is noted that "prisoners have a constitutional right of access to the courts," *Bounds v. Smith*, 430 U.S. 817, 821 (1977), in order to state a claim for denial of this right, Binkley must plead that he has suffered an "actual injury" arising from the challenged conduct of defendants.  *See Lewis v. Casey*, 518 U.S. 343, 349-50 (1996).  In their brief in support of the instant motion, Defendants argue that Binkley has failed to provide any details regarding a date or case which would demonstrate "actual injury" with specificity.  (*See* Docs. 12 at 8-9; Doc. 42 at 9-11.) (citing *Oliver*

23

*v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997) (no actual injury due to interference with legal mail); *Robinson v. Ridge*, 996 F. Supp. 447, 450 (E.D. Pa. 1997) (no actual injury from loss of legal documents)).  In his brief in opposition to the instant motions, Binkley does not cite to any specific instance in which his access to the courts has been hindered.  Instead, he seems to be claiming that his period of lockdown time prevented him from filing grievances related to this case or from making filings in this case.  (*See* Doc. 32 at 15.)  However, from a review of the docket in this case, it appears that Binkley has either been able to timely file documents or request extensions of time in which to do so.[6]  Therefore, the court concludes that Binkley has failed to assert an access to the courts claim with respect to the instant case.  As such, Defendants Chiampi and Haradem will be dismissed as parties in this action.

**D.**     **Amended Complaint**

---

[6]   To the extent that Binkley claims that his access to the courts was hindered by SCI-Dallas' law library inadequacies with respect filing grievances related to this case, he has failed to state a claim by virtue of the fact that he has filed the instant action in this court.  Simply put, the very fact that Binkley has filed this action and pursued his claims in this court belies his claim that his access to the courts was denied with respect to this case.  *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (concluding that while prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts and such a right is not compromised by the failure of the prison to address an inmate's grievance).

As set forth above, the court will afford Binkley the opportunity to amend his complaint in accordance with this memorandum.  Binkley is reminded that in preparing his amended complaint, among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2).  *Id.*; *see also Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

Binkley is also reminded that his amended complaint must sufficiently allege each Defendant's personal involvement or state that any conduct attributable to each of them amounted to a violation of his constitutional rights.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (in order to state a viable claim under § 1983, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim).  To meet the standards set forth in Rule 8, Binkley's amended complaint must at least

25

contain a modicum of factual specificity, identifying the Defendants and the particular

conduct of the Defendants purported to have harmed him.  "A complaint which

contains a bare bones allegation that a wrong occurred and which does not plead any

of the facts giving rise to the injury, does not provide adequate notice."  *Purveegiin v.*

*Pike County Corr. Facility*, No. 3:CV-06-0300, 2006 WL 1620219 (M.D. Pa. June 6,

2006).

In addition, Binkley is advised that the "amended complaint must be complete

in all respects.  It must be a new pleading which stands by itself as an adequate

complaint without reference to the complaint already filed."  *Young v. Keohane*, 809

F. Supp. 1185, 1198 (M.D. Pa. 1992).  Additionally, it must specify the existence of

actions by Defendants which have resulted in constitutional deprivations.  *See, e.g.*,

*Rizzo v. Goode*, 423 U.S. 362, 370–73 (1976).

Further, Binkley's amended complaint should be limited with respect to only

those Defendants and claims that arise out of the same transaction or occurrence or

series of transactions or occurrences and that have questions of law or fact common to

all Defendants and claims.  Binkley should file separate actions as to any Defendants

and claims that do not share common legal and factual questions and that do not arise

out of the same transactions or occurrences.  Further, it is noted that other than

26

Defendants Miller, Truchon, and Davis, Defendants Keefe Group, Mooney,

Breuninger, Mulgrew, Mosher, Dr. Jesse, and Zackarackis, remain Defendants in this

action and Plaintiff should reassert his claims against all of these Defendants in his

amended complaint.

Binkley is advised that if he fails, within the applicable time period, to file an

amended complaint adhering to the standards set forth above, the remaining claims

will be dismissed for failure to state a claim.


**IV.    Conclusion**

For the reasons set forth above, the motions to dismiss will be granted as to

Binkley's claims for money damages against all of the Commonwealth Defendants in

their official capacities.  Further, the motion to dismiss as to Defendants Rendell,

Beard, Klopotoski, Walsh, Demming, Varner, Leskowsky, Ellers, Chiampi, and

Haradem, will be granted and those Defendants will be dismissed as parties in this

action.  Binkley will be afforded the opportunity to reassert his claims against

Defendants Miller, Truchon, and Davis in their individual capacities in an amended

complaint.  Further, the court notes that Defendants Keefe Group, Mooney,

Breuninger, Mulgrew, Mosher, Dr. Jesse, and Zackarackis, remain Defendants in this

action and Plaintiff should reassert his claims against these Defendants in his amended complaint.

An appropriate order will issue.

                        s/Sylvia H. Rambo

                        United States District Judge

Dated:  January 30, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY BINKLEY,** | : | **CIVIL NO. 1:CV-10-01245** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **GOVERNOR EDWARD RENDELL,** | : | |
| ***et al.,*** | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY
ORDERED THAT** the motions to dismiss (Docs. 11 & 41) are **GRANTED** in part
and **DENIED** in part as follows:

1) The motion to dismiss filed on September 16, 2010 (Doc. 11) is **GRANTED**
as to Defendants Demming, Leskowsky, Chiampi, Haradem, Rendell, Beard, Varner,
Klopotoski, and Walsh, and these Defendants are **DISMISSED** as parties in this
action.

2) The motion to dismiss filed on September 16, 2010 (Doc. 11) is **DENIED** as
to Defendants Mooney, Breuninger, Mulgrew, Mosher, and Zackarackis.

3) The motion to dismiss filed on August 25, 2011 (Doc. 41) is **GRANTED** as
to Defendant Ellers, and this Defendant is **DISMISSED** as a party in this action.

    4) The motion to dismiss filed on August 25, 2011 (Doc. 41) is **DENIED** as to Defendants Miller, Truchon, and Davis.

    5) Plaintiff's amended complaint shall be filed in accordance with the instructions set forth in the accompanying memorandum no later than **February 16, 2012**.

                          s/Sylvia H. Rambo
                          United States District Judge

Dated:  January 30, 2012.